**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MURPHY-HOLMAN,<br><br>Plaintiff,<br><br>    v.<br><br>WASHINGTON METROPOLITAN<br>AREA TRANSIT AUTHORITY,<br><br><br>Defendants. | No. 25-cv-00732-ZMF |

## ORDER

Before the Court is Defendant Washington Metropolitan Area Transit Authority's ("WMATA") Motion for Summary Judgment. *See* Mot. Summ. J., ECF No. 13. For the reasons stated below, WMATA's Motion is **DENIED** in part and **GRANTED** in part.

## I.    FACTUAL BACKGROUND

On October 23rd, 2024, Plaintiff, a 61-year-old woman boarded a WMATA bus. *See* Mot. Summ. J., Dep. of Jaquline Murphy-Holmon 23:2–7, ECF No. 13-3. Plaintiff testified that she boarded the front of the bus alone, while her partner boarded through the back doors. *See* ECF No. 13-3 at 33:5–11. The surveillance video depicts Plaintiff boarding with a cane and moving toward the farebox. *See* WMATA video at 8:36:46–8:36:48. The video then shows Plaintiff standing near the front of the bus at the time the doors closed. *See id.* at 8:37:03. Then, while the bus was still stopped, a woman stood up and appeared to offer Plaintiff her seat. *See id.* When the bus began moving, Plaintiff was holding onto a pole with her left hand while facing the newly vacated seat. *See id.* at 8:37:05. Plaintiff then released the pole with her left hand and reached for another pole with her right hand. *See id.* at 8:37:06. Plaintiff released her right hand from the pole while the bus

was in motion and fell onto her back. *See id.* at 8:37:10–8:37:11. The bus was traveling 7 miles per hour when Plaintiff fell. *See id.* at 8:37:11. No other passenger fell. *See id.*

Plaintiff remained on the bus until leaving at a later stop. *See* ECF No. 13-3 at 27:13–28:15. Ambulance staff examined Plaintiff upon getting off the bus. *See id.* at 41:7–10. Plaintiff detailed a 10/10 pain in her lower back, neck, and legs. *See id.* at 41:11–16, 42:15–22. Afterwards, Plaintiff boarded another bus by herself and walked two miles to reach her home. *See id.* at 43:13–21. The following day, she called an ambulance because the pain prevented her from getting out of bed. *See* ECF No. 13-6 at ¶ 13. The ambulance took her to an urgent care center. *See* Compl. ¶ 1, ECF No. 1-6. The physician at the urgent care directed Plaintiff to seek physical therapy treatment. *See id.* at ¶ 3. Plaintiff has since been taking pain medication. *See id.*

On November 12, 2024, Plaintiff filed her complaint. Because Plaintiff proceeds pro se, the Court construes her complaint liberally. *See Williams v. Bank of New York Mellon*, 169 F. Supp. 3d 119, 123–24 (D.D.C. 2016). Even so, the complaint must still "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff alleges that she fell because "the driver pulled off fast" and because the driver "didn't give [her] a chance to sit down before the bus started moving." ECF No. 1-6 at 1–2. Liberally construed, these allegations assert two theories of negligence: first, that Plaintiff's injuries resulted from an unusually sudden or violent movement of the bus; and second, that the driver negligently failed to allow Plaintiff sufficient time to sit before pulling away despite her apparent physical limitations.

On January 20, 2026, WMATA filed a motion for summary judgment. Ms. Murphy-Holman filed her opposition on May 27, 2026, and WMATA filed its reply later that day.

**II.    STANDARD OF REVIEW**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact by identifying those portions of the record that support its motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies that burden, the nonmoving party must identify specific facts demonstrating that a genuine issue remains for trial. *See id.* at 324.

A dispute is "genuine" only if a reasonable jury could return a verdict for the nonmoving party, and a fact is "material" only if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh the evidence or make credibility determinations; those functions are reserved for the jury. *See Anderson*, 477 U.S. at 255.

This action is now before a federal court following WMATA's removal from the Superior Court of the District of Columbia pursuant to 28 U.S.C. § 1446. However, removal does not alter the substantive law governing Plaintiff's negligence claim. *See Hall v. Lanier*, 708 F. Supp. 2d 28, 31 n.3 (D.D.C. 2010). Accordingly, the Court applies federal procedural law to resolve the present motion, while applying District of Columbia substantive law to determine the elements of negligence and the scope of WMATA's duty as a common carrier. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

## III.    DISCUSSION

### A.    Duty of Reasonable Care

Under D.C. law, a plaintiff in a negligence action "must first show that a defendant owed [her] a duty of care." *Thurman v. District of Columbia*, 282 A.3d 564, 572 (D.C. 2022). Next, "a plaintiff must establish 'the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury.'" *Id.* (quoting *Evans-Reid v. District of Columbia*, 930 A.2d 930, 937 n.6 (D.C. 2007)).

"WMATA, like any common carrier, owes a duty of reasonable care to its passengers." *Graham v. WMATA*, No. 22-cv-407, 2024 WL 1178470, at *2 (D.D.C. Mar. 19, 2024) (quoting *McKethean v. WMATA*, 588 A.2d 708, 712 (D.C. 1991)). The Restatement dictates that "reasonable care" depends on the circumstances known or reasonably apparent to the carrier at the time. *See* Restatement (Second) of Torts § 314A cmt. e (A.L.I. 1965). "As the D.C. Circuit has recognized, 'the District of Columbia [ ] has adopted Section 314A of the Restatement (Second) of Torts.'" *Graham*, 2024 WL 1178470, at *2 (quoting *Whiteru v. WMATA*, 89 F.4th 166, 169 (D.C. Cir. 2023)). Thus, the relevant inquiry is "what the duty of reasonable care entailed based on what was apparent to [the bus operator] at the time [Plaintiff boarded]." *Id.* at *3.

Ordinarily, it is not the bus driver's duty "to see that passengers are seated before giving the signal to start." *Connor v. Washington Ry. & Elec. Co.*, 43 App. D.C. 329, 333 (1915). At the same time, *Connor* recognized that the analysis changes where "facts show[] a condition that entitled [the passenger] to unusual care or protection." *Id.* The D.C. Court of Appeals expanded upon that exception in *Sullivan v. Yellow Cab Co.*, 212 A.2d 616 (D.C. 1965). The *Sullivan* court held that a common carrier's duty expands where "a passenger is handicapped by physical disability, such as blindness, illness, age, lameness, or other obvious infirmity, any of which would

4

be reasonably apparent or made known to the carrier." *Id.* at 618. In those circumstances, the carrier must provide "such assistance to the passenger as is reasonably necessary in boarding or alighting.[1]" *Id.*[2]

Viewing the record in the light most favorable to Plaintiff, the Court cannot conclude as a matter of law that Plaintiff's condition was insufficiently apparent to trigger the heightened duty recognized in *Sullivan*. Plaintiff testified that she used a cane because of a bad knee. *See* ECF No. 13-3 at 26:17–27:2. The surveillance video depicts Plaintiff boarding with a cane directly in front of the bus driver ~~and moving toward the farebox~~. *See* WMATA video at 8:36:46–8:36:48. Plaintiff paid her fare within the operator's view before proceeding toward the seating area. *See id.* at 8:36:50. A reasonable jury could conclude from these facts that Plaintiff's mobility limitations were sufficiently apparent to require the operator to exercise greater care than would ordinarily be owed to an able-bodied passenger. *See Graham*, 2024 WL 1178470, at *3 (denying summary judgment where a reasonable jury could find that a bus operator failed to exercise reasonable care by not lowering the bus for a passenger visibly carrying a baby and stroller while exiting).

WMATA's reliance on *Wiggins v. Capital Transit Co.*, 122 A.2d 117 (D.C. 1956), *D.C. Transit System, Inc. v. Perry*, 337 A.2d 224 (D.C. 1975), and related "jerk and jolt" cases is misplaced. *See* Mot. Summ. J., Mem. Supp. Def. WMATA's Mot. Summ. J. 8–11, ECF No. 13-1. These cases address the duty owed to able-bodied passengers who alleged injuries by the routine movement of a bus or streetcar. *See Wiggins*, 122 A.2d at 119 (holding that a common carrier is

---

[1] "Alighting" is a fancy way to say exiting a vehicle, such as a bus.

[2] *Sullivan* further provides that "if [the plaintiff] is attended by a companion apparently capable of giving any necessary assistance, there is no obligation upon the carrier's agent to proffer aid." *Sullivan*, 212 A.2d at 619. That exception does not apply here. Plaintiff boarded the bus alone through the front doors while her partner entered through the rear doors. *See* ECF No. 13-3 at 33:5–11. Nothing suggests that the bus operator knew Plaintiff was accompanied or that her partner could provide assistance.

5

not liable for the ordinary jerks and jolts incident to normal operation and that recovery requires evidence of an unusually or extraordinarily forceful movement); *Perry*, 337 A.2d at 225 (same); *see also Fells v. WMATA*, 357 A.2d 395, 396 (D.C. 1976) (same). In each of these cases, the dispositive question was whether the plaintiff had produced sufficient evidence that the vehicle's movement was so extraordinary or violent as to permit an inference of negligent operation. *See, e.g.*, *Wiggins*, 122 A.2d at 119; *Perry*, 337 A.2d at 225; *Fells*, 357 A.2d at 396.

But none of these "jerk and jolt" cases considered a common carrier's duty of reasonable care to a passenger with a visible disability. *Sullivan* answered that question: where the operator is reasonably aware of a passenger's disability, the duty of care may require the carrier to provide "such assistance . . . as is reasonably necessary." *Sullivan*, 212 A.2d at 618. One way an operator becomes aware of such disability is where the passenger uses a mobility aid, like a cane. *See id.* As such "a bus driver is not required to wait until his passengers are seated before starting the bus in operation, unless the passenger labors under some apparent infirmity or disability." *Carolina Coach Co. v. Bradley*, 299 A.2d 474, 477 (1973). Here—unlike the plaintiffs in the "jerk and jolt" cases—the record would permit a reasonable jury to find that Plaintiff was infirm. *See* WMATA video at 8:36:46–8:36:48. Those facts could support a finding that a heightened duty of care existed which made it reasonably necessary for the bus driver to wait until Plaintiff was seated before starting the bus. Conversely, a reasonable jury could also conclude that the operator acted reasonably under the circumstances. Resolving this question is the province of the jury, not the Court on summary judgment.

WMATA points to evidence that the bus was traveling only seven miles per hour when Plaintiff fell, that no other passenger fell, and that Plaintiff later exited the bus, boarded another bus, and ultimately walked home. *See* ECF No. 13-1 at 6. But that evidence is irrelevant to the

6

question presented here: whether Plaintiff's physical condition was known or reasonably apparent to the operator when she boarded the bus and if her physical condition created a heightened standard of care. Plaintiff's ability to leave the bus, get on a new bus, and walk afterwards bears on the extent of her injuries, not on what the operator reasonably perceived before the bus began moving. And while the speed of the bus and the absence of other falls may bear on other theories of negligence, they do not resolve whether the operator was required to provide additional assistance in light of Plaintiff's apparent condition. Because genuine disputes remain regarding what was reasonably apparent to the operator and what reasonable care was required under those circumstances, summary judgment is inappropriate.

B.    Expert Testimony Is Not Required

WMATA argues that Plaintiff cannot establish the applicable standard of care because she has not designated an expert witness. *See* ECF No. 13-1 at 12. The Court disagrees.

District of Columbia law generally requires expert testimony when a plaintiff seeks to establish a professional or technical standard of care that is "beyond the ken of the average lay person." *Graham*, 2024 WL 1178470, at *3 (quoting *Robinson v. WMATA*, 941 F. Supp. 2d 61, 67 (D.D.C. 2013)). Conversely, expert testimony is unnecessary where the alleged negligence concerns matters within "the realm of common knowledge and everyday experience." *Briggs v. WMATA*, 481 F.3d 839, 845 (D.C. Cir. 2007) (quoting *Hill v. Metro. Afr. Methodist Episcopal Church*, 779 A.2d 906, 908 (D.C. 2001)). As courts have long recognized, the need for expert testimony turns not on the defendant's profession, but on whether the jury can evaluate the challenged conduct without specialized knowledge. *See Applegate v. Dobrovir, Oakes & Gebhardt*, 628 F. Supp. 378, 386 (D.D.C. 1985) (explaining that expert testimony is unnecessary where the alleged negligence is within the ordinary understanding of laypersons).

This case falls within the common knowledge exception. Plaintiff's principal theory is that the bus driver failed to exercise reasonable care by placing the bus in motion before a visibly infirm passenger had an opportunity to reach an available seat. *See* ECF No. 1-6 ¶ 2. Plaintiff does not contend that the driver violated a technical WMATA operating procedure or an industry-specific safety standard requiring expert explanation.

As Judge Mehta explained, the D.C. Circuit expressed "serious[] doubt that determining whether it is reasonable to start a motor vehicle without checking to make sure one's passengers are secure is outside the 'realm of common knowledge and everyday experience' of average jurors." *Walls v. WMATA*, 2021 WL 8875534, at *1 (D.D.C. Dec. 14, 2021) (quoting *Robinson v. WMATA*, 774 F. Supp. 2d 33, 39 (D.C. Cir. 2014)).[3] This Court agrees. Jurors need not possess specialized knowledge of bus operations to evaluate whether a reasonably prudent driver should have waited for a visibly disabled passenger to sit before moving the vehicle. Nor is expert testimony necessary to establish that such a precaution is required where the relevant legal authorities have already recognized that heightened care is owed to passengers with apparent disabilities. *See Sullivan,* 212 A.2d at 618; *see also Carolina Coach,* 299 A.2d at 477.

Accordingly, Plaintiff's failure to designate an expert witness does not entitle WMATA to summary judgment on her primary negligence theory.

---

[3] WMATA relies on the district court's opinion in *Robinson*. *See* ECF No. 13-1 at 12 (citing *Robinson*, 941 F. Supp. 2d at 67). That reliance is misplaced. Although the district court concluded that expert testimony was required to establish the applicable standard of care, the D.C. Circuit subsequently expressed "serious[] doubt that determining whether it is reasonable to start a motor vehicle without checking to make sure one's passengers are secure is outside the 'realm of common knowledge and everyday experience' of average jurors." *Robinson*, 774 F.3d at 39. The court ultimately affirmed only because Robinson had forfeited her challenge to the district court's expert-testimony ruling. *See id.* at 40.

C.    Plaintiff Cannot Proceed on a Separate "Jerk or Jolt" Theory

Plaintiff also alleges that the bus "pulled off fast" and "yanked off." ECF No. 1-6 ¶ 1; ECF No. 13-3 at 23:2–7. To the extent Plaintiff seeks to proceed on a theory that the bus was negligently operated because it accelerated with unusual force, D.C. law imposes a different evidentiary burden.

Ordinary starts and stops are common occurrences of public transportation. *See Boyko v. WMATA*, 468 A.2d 582, 584 (D.C. 1983). As such, a plaintiff may recover "against the bus company only by showing 'that the "jerk" or "sudden start" was of such unusual and extraordinary force that it could not reasonably be said to have happened in the ordinary operation of the vehicle.'" *Id.* at 583–84 (quoting *Wiggins*, 122 A.2d at 118); *see also Perry*, 337 A.2d at 225 (citing *Wiggins*, 122 A.2d at 118) ("[A] carrier was not liable for jerks or jars which were no more than the necessary or usual incidents of the operation of the conveyance."). Such force "cannot be inferred from 'mere descriptive adjectives and conclusions' alone." *Boyko*, 468 A.2d at 584 (quoting *Wiggins*, 122 A.2d at 118). It is well established that mere testimony regarding sudden stops or jerks cannot support a claim of negligence on its own. *See Fells*, 357 A.2d at 395–96.

Plaintiff has not made such showing. In fact, Plaintiff conceded that the bus "moved like [it] normally moves." ECF No. 13-3 at 23:2–7, 37:12–14; ECF No. 1-6 ¶ 1. That alone ends the analysis. *See Wiggins*, 122 A.2d at 118 ("[Plaintiff's witness] testified that the bus started with a 'little jerk.'").

Even setting this concession aside, the result is the same. The surveillance video shows that the bus was traveling approximately seven miles per hour when Plaintiff fell and that no other passengers fell. *See* WMATA video 08:37:11. That speed and the lack of injuries demonstrates "ordinary operation of the vehicle." *Wiggins*, 122 A.2d at 118. Moreover, Plaintiff offered no

expert or medical testimony suggesting that her injuries were consistent with forces beyond those ordinarily associated with the normal operation of a bus. *Compare Robinson*, 941 F. Supp. 2d at 72 (holding that testimony from a non-medical witness regarding the possible cause of plaintiff's injuries was insufficient), *with Boyko*, 468 A.2d at 585 (relying in part on expert medical testimony that "it would take a considerable amount of violence" to cause plaintiff's injury to deem bus was not operating normally).

Here, Plaintiff has offered only "mere descriptive adjectives and conclusions" without any credible evidence in support. *Perry*, 337 A.2d at 225. This is insufficient to create a genuine dispute that the bus's movement involved the extraordinary force required under D.C. law. *See id.* Accordingly, WMATA is entitled to summary judgment on Plaintiff's separate negligence theory based solely on the speed or force with which the bus accelerated.

### D.    Contributory Negligence

"Contributory negligence is an affirmative defense, and thus it is the defendant's burden 'to establish, by a preponderance of the evidence, that the plaintiff failed to exercise reasonable care.'" *Whiteru v. WMATA*, 25 F.4th 1053, 1058 (D.C. Cir. 2022) (quoting *Poyner v. Loftus*, 694 A.2d 69, 71 (D.C. 1997)). A plaintiff is contributorily negligent where her negligence was "a substantial factor in causing [her] injury, even if the defendant was also negligent." *Sinai v. Polinger Co.*, 498 A.2d 520, 528 (D.C. 1985).

WMATA argues that Plaintiff's contributory negligence bars her recovery. *See* ECF No. 13-1 at 14–15. But "[t]he District of Columbia Court of Appeals has made it abundantly clear that contributory negligence is almost always a question of fact for the jury." *Jeffries v. Potomac Dev. Corp.*, 822 F.2d 87, 91 (D.C. Cir. 1987) (citing *Rich v. District of Columbia,* 410 A.2d 528, 532 (D.C.1979)). "It is only in the 'unusual' or 'extraordinary' case that a court would be justified in

removing the question of contributory negligence from the jury." *Id.* (citing *Rich,* 410 A.2d at 532). Such an "unusual case" arises where "only one conclusion reasonably could be drawn from the evidence," such that contributory negligence is not a question of fact for the jury. *Rich*, 410 A.2d at 532.

Whether Plaintiff exercised reasonable care cannot be divorced from the disputed facts. Plaintiff contends that the bus began moving before she had a reasonable opportunity to sit down. *See* ECF No. 1-6 ¶ 1; ECF No. 13-3 at 32:5–10, 35:1–5. WMATA argues that Plaintiff acted negligently by releasing her grip on the pole while the bus was in motion. *See* ECF No. 13-1 at 14–15. A reasonable jury could reach either conclusion on this issue. Thus, this is the usual case in which the jury—not the Court—must resolve disputed facts and draw the reasonable inferences from them. *See Jeffries*, 822 F.2d at 91.

WMATA cites to *Fells* to support its contributory negligence defense. *See* ECF No. 13-1 at 15. In *Fells*, the plaintiff had already reached a seat and, while the bus was proceeding, voluntarily stood and attempted to change seats. *See Fells*, 357 A.2d at 396. The court—in reviewing the judgment on appeal—concluded that the plaintiff "knew or should have known that it would be dangerous to change seats under all the circumstances as she described them." *Id*.

*Fells* is inapplicable for two reasons. First, the question of contributory negligence in *Fells* was not decided on summary judgment, but by the factfinder. *See id.* The same process is appropriate here. *See Jeffries*, 822 F.2d at 91. Second, Plaintiff here allegedly never reached a place of safety before the bus began moving. *See* ECF No. 1-6 at 1–2. That is different than *Fells* where the plaintiff was in a place of safety before she changed seats. *See Fells*, 357 A.2d at 396. Whether it was reasonable for Plaintiff to continue toward the open seat or whether she instead should have remained stationary while holding the pole, depends on "all the circumstances" surrounding the

11

driver's and Plaintiff's decisions. *Id.* These disputed factual questions cannot be resolved by the Court. Thus, summary judgment based on contributory negligence is inappropriate.

## IV.    CONCLUSION

WMATA's Motion for Summary Judgment is **DENIED** as to Plaintiff's claim that the bus operator negligently failed to wait for her to sit before putting the bus in motion and **GRANTED** as to Plaintiff's claim that an unusually sudden or violent movement of the bus caused her fall.


Date:    July 30, 2026

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE